J-S18031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: F.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1320 WDA 2023 |

Appeal from the Order Entered October 10, 2023
In the Court of Common Pleas of Erie County
Orphans' Court at No(s): CP-25-DP-0000005-2023

BEFORE: PANELLA, P.J.E., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED: JULY 12, 2024**

S.M. ("Mother") appeals from the order entered on October 10, 2023, that changed the permanent placement goal of her son, F.M. ("Child"), born in April of 2008, from reunification to adoption.[1]  We affirm.

The record reveals the following facts and procedural history.  On January 2, 2023, fourteen-year-old Child sustained a traumatic head injury and was placed in a medically induced coma at Children's Hospital in Pittsburgh.  The following day, the juvenile court placed him in the emergency protective custody of Erie County Office of Children and Youth ("OCY" or "the Agency") after receiving a report alleging that Child was at home in Mother's custody when he sustained the injury, and that Mother provided no explanation for the injury.  The report was ultimately determined to be

---

[1] J.B. ("Father") did not file an appeal from the goal change order.

founded. Mother was arrested on felony charges arising from Child's injury, which remained pending at the time of the subject proceeding.

OCY filed a shelter care application on January 6, 2023, which the court granted after a hearing. On January 9, 2023, OCY filed a dependency petition alleging that Child was without proper parental care or control. Specifically, OCY alleged that Mother suffers from, *inter alia*, a history of drug and alcohol abuse, mental health issues, and domestic violence, which led to the Agency having an extensive history with her since 2011. In fact, the Agency alleged that the referral leading to Child's current placement was the thirty-sixth received related to this family. *See* Dependency Petition, 12/9/23, at 1-4.

The Orphans' Court conducted a dependency hearing on January 19, 2023, during which Mother, who was then incarcerated, stipulated to the allegations in the dependency petition. By order of adjudication and disposition entered on January 26, 2023, the court adjudicated Child, who had made some recovery from his injuries, dependent and maintained his placement in foster care. The court established Child's permanent placement goal as reunification and required Mother to, *inter alia*, participate in mental health treatment, enroll in programs for domestic violence and parenting, and obtain and maintain safe and stable housing. Supervised visits were not ordered between Mother and Child because of Mother's pending criminal charges. *See* Order and Disposition, 1/26/23, at 1-4; N.T., 10/6/23, at 5-6.

The Orphans' Court held a first permanency review hearing on April 5, 2023, and subsequently added to Mother's requirements the condition she attend an anger management program. *See* Permanency Review Order, 4/12/23, at 4. The court found Mother to be in minimal compliance with the rest of her permanency plan objectives. *See id*. at 1.

On September 14, 2023, OCY filed a petition to change Child's placement goal from reunification to adoption. The Orphans' Court conducted a permanency hearing on October 6, 2023, during which OCY caseworker William Rounsley ("Mr. Rounsley") recommended a goal change to adoption. In making that recommendation, Mr. Rounsley cited Child's lack of interest in Mother and his repeated and clearly-stated preference for adoption, *see* N.T., 10/6/23, at 6; and Mother's ongoing "mental health crisis" requiring intensive psychiatric services, which she declined, and her attempts to self-medicate with drugs and alcohol, *see id*. at 9-12. Additionally, Mother's own testimony raised concerning questions about her orientation to reality as manifested in her claim she received money from celebrities, including $1,000 from former profession basketball player, Shaquille O'Neal. *See id* at 26-27-30-32. At the conclusion of the evidence, Child's guardian *ad litem* ("GAL") stated agreement with OCY's recommendation and noted Child's clearly-expressed preference for the goal change to adoption. *See id*. at 34.

By order dated and entered on October 10, 2023, the court changed Child's goal to adoption.[2]  On November 6, 2023, Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).  The court filed a Rule 1925(a) opinion on January 4, 2024.[3]

Mother raises the following issue on appeal:

> Whether the [court] committed an abuse of discretion and/or error of law when it determined that the concurrent permanency goal of reunification was no longer feasible and changed the goal to adoption?

Mother's Brief at 3 (unnecessary capitalization eliminated).[4]

This Court has set forth the appropriate standard of review of a juvenile court's permanency determination, as follows.

> In cases involving a court's order changing the [court-ordered] goal . . . to adoption, our standard of review is abuse of discretion.  To hold that the trial court abused its discretion, we must determine its judgment was manifestly unreasonable, that the court disregarded the law, or that

_____

[2] The certified docket reveals that, on October 13, 2023, the agency filed a petition for the involuntary termination of Mother's parental rights to Child. Following the hearing, the orphans' court terminated Mother's parental rights by order dated December 15, 2023.  Mother filed a notice of appeal from the involuntary termination order, docketed at 88 WDA 2024, which is pending before this Court.

[3] In its Rule 1925(a) opinion, the court states Mother's appeal from the goal change order is moot considering its subsequent involuntary termination of her parental rights.  We disagree; Mother's appeal from the termination decree is currently pending before this Court.

[4] Both Child's GAL and the Agency filed separate letters with this Court, *in lieu* of appellate briefs, in support of the goal change order.

its action was a result of partiality, prejudice, bias or ill will. While this Court is bound by the facts determined in the trial court, we are not tied to the court's inferences, deductions[,] and conclusions; we have a responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Therefore, our scope of review is broad.

*In Interest of L.T.*, 158 A.3d 1266, 1276 (Pa. Super. 2017) (citations omitted).

In dependency proceedings, this Court's paramount focus is the best interests of the children, a consideration that

supersede[s] all other concerns, including the conduct and the rights of the parent. . .. [A] child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*L.T.*, 158 A.3d at 1276 (citations and quotation marks omitted).

Section 6351 of the Juvenile Act, which governs the considerations relevant to a permanency review hearing, provides in relevant part:

**(f) Matters to be determined at permanency hearing**.— At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

\* \* \* \* \*

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child[.]

**\* \* \* \***

**(f.1)    Additional    determination.--**Based    upon    the determinations made    under subsection    (f) and    all    relevant evidence presented at the hearing, the court shall determine one of the following:

(1) If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.

(2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

\* \* \* \* \*

**(g) Court order.--**On the basis of the determination made under subsection (f.1), the court shall order the continuation, modification or termination of placement or other disposition

which is best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S.A. § 6351(f)(1)-(6) and (9), (f.1)(1) and (2), (g).

Mother asserts the evidence does not demonstrate that it is in Child's best interest to change his permanency goal to adoption. *See* Mother's Brief at 11. She argues the ten months since Child's adjudication of dependency was not sufficient time to comply with the permanency plan, she was trying to comply with the plan at the time of the April 2023 permanency review hearing, and she has "remained consistent" in participating in mental health counseling and medication management. *See* Mother's Brief at 13-14. Moreover, Mother faults the Agency for failing to recommend services to repair the parent-child relationship. *See id*.

The court explained it changed Child's goal based on Child's repeated and clearly stated preference, concerns about Mother's health, the physical abuse child suffered while in Mother's care, and Mother's inability to alleviate the circumstances that led to the placement:

> [The court met with Child and] would note that he is clearly a child who is struggling, but the one thing he's not struggling with is the fact that he wants to be adopted. He does not want reunification with his mother, who he refers to as [her first name] and not as Mom. ... I've met with him in the past and that has been his unwavering claim to the [c]ourt.
>
> Additionally, a couple other things. I have significant concerns with the level of Mom's mental health right now and I think what's kind of been set aside here is the main reason we are here and that is the significant physical child abuse to [Child] that led to this incident in the first place. That [child abuse] is validated, has been validated, by the Agency regardless of . . .

what the outcome is of the pending [criminal] charges, and that causes great concern to the court because there's a level of trauma to [C]hild.

And I clearly agree with Mom when she says [Child] has trauma from the situation, but I don't know that Mom is acknowledging . . . her role in the situation which, quite frankly, is her right . . . with regard to the criminal system, but that doesn't change the fact that that prevents her from alleviating the circumstances that led to [C]hild's dependency in the first place because we can't fix what we don't admit and there is a *prima facie* finding per the law in this area of abuse when she is the parent in the home[,] and the abuse happened[,] and it was substantial. [C]hild is fortunate to have recovered as well as he did.

*See N.T.*, 10/6/23, at 34-36 (spelling standardized); *see also* 23 Pa.C.S.A. § 6381(d) (defining *prima facie* evidence of abuse by, a parent or other person responsible for the child's welfare as "[e]vidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child.").[5]

Our thorough review demonstrates the record evidence supports the court's findings that: (1) Mother has significant mental health issues for which she is not receiving appropriate treatment; (2) *prima facie* evidence exists that Mother perpetrated series injuries on Child that resulted in his placement; and (3) Child wants no contact with Mother. Based on these sustainable factual findings, we discern no abuse of discretion by the court in concluding

---

[5] The record does not specify what, if any, health problems Child suffers because of the head trauma sustained in January 2023.

- 8 -

that changing the permanent placement goal from reunification to adoption is in Child's best interests.  **See L.T.**, 158 A.3d at 1279 (holding the Juvenile Act "does not prohibit" a court from "altering the child's permanency goal at any time that the court determines that reunification is no longer viable and that another more appropriate goal exists"); **see also** 23 Pa.C.S.A. § 6381(d). Accordingly, we affirm the order changing Child's permanent placement goal to adoption.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/12/2024